UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                          **DECISION
                                                    and ORDER**

     v.                                         **05-CR-174-A**

MICHAEL RAY JACKSON,
RANDALL PARKER a/k/a Randall a/k/a Randy Parker
    a/k/a Randell Parker,
                   Defendants.



APPEARANCES:                        TERRANCE P. FLYNN
                                    UNITED STATES ATTORNEY
                                    Attorney for the Government
                                    JOEL L. VIOLANTI
                                    Assistant United States Attorney, of Counsel
                                    Federal Centre
                                    138 Delaware Avenue
                                    Buffalo, New York    14202


                                    THOMAS J. EOANNOU, ESQ.
                                    Attorney for Defendant Michael Ray Jackson
                                    Eoannou, Lana & D'Amico
                                    484 Delaware Avenue
                                    Buffalo, New York  14202


                                    J. GLENN DAVIS, ESQ.
                                    Attorney for Defendant Randall Parker
                                    Law Office of J. Glenn Davis
                                    69 Delaware Avenue
                                    Suite 1104
                                    Buffalo, NY 14202

**JURISDICTION**

This case was referred to the undersigned by the Hon. Richard J. Arcara on March 14, 2006 for all pretrial matters.  The matter is presently before the court Defendants' motions seeking discovery and a Bill of Particulars, an audibility hearing, and severance (Doc. Nos. 15, 16).

**BACKGROUND AND FACTS** [1]

Defendants Michael Ray Jackson ("Jackson") and Randall Parker ("Parker") were initially indicted in a seven count indictment on July 7, 2005, charging violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) and 21 U.S.C. § 846.  (Doc. No. 1). Specifically, Jackson and Parker are together charged in Count 1 of the Indictment with conspiracy to possess with intent to distribute, 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B) and 21 U.S.C. § 846. ("Count 1" or "the Conspiracy Count").  Jackson is alone charged with knowingly, intentionally, and unlawfully possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on or about December 1, 2004 ("Count 2"), January 14, 2005 ("Count 3"), and April 15, 2005 ("Count 6").  Parker is alone charged with knowingly, intentionally and unlawfully possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) on or about January 28, 2005 ("Count 4"), February 8, 2005 ("Count 5"), and June 3, 2005 ("Count 7").

In support of their respective motions, Parker filed the Affirmation of J. Glenn

---

[1]  Taken from the pleadings and papers filed in this action and the pleadings and papers filed in connection with 05-CR-173-A, an indictment against Martellus Jones, Maurice Fisher, Emilio Galarza, Irving Mitchell, Karen Pierce, Shauncey Galarza, Daniele Liddle and Eugene Davis for criminal narcotics violations relative to the same narcotics organization, the "TALIBAN" organization..

Davis, Esq. (Doc. No. 15) ("Davis Affirmation") on February 10, 2006, and Jackson filed

the Affirmation  of Thomas J. Eoannou, Esq. (Doc. No. 16) ("Eoannou Affirmation") on

February 12, 2006.[2]  ("Defendants' Motions").  The Government filed its response to

Defendants' Motions on March 8, 2006 (Doc. No. 18) ("Government's Response").

Defendant Jackson filed a Reply to the Government's Response on March 12, 2006

(Doc. No. 20) ("Jackson Reply Memorandum"), and oral argument was held on March

16, 2006 (Doc. No. 22).  On March 27, 2006, the Government filed the Government's

Surreply to Defendant's Reply Memorandum (Doc. No. 24) ("Government's Surreply").

        Defendants' Motions also seek to join in the motions made by co-defendants,

leave to file additional motions, disclosure of *Brady*, *Giglio* and *Jencks* Act material, a

Bill of Particulars, discovery pursuant to Fed.R.Crim.P. 16 ("Rule 16"), disclosure of

informant information, severance, an audibility hearing, and disclosure of evidence

pursuant to Fed. R. Evid. 404(b), 608 and 609.[3]  The Government has requested

reciprocal recovery.

        In their motion papers, and at oral argument, Defendants requested the

Government to disclose, or that they be permitted to inspect, evidence subject to

disclosure under Fed.R.Crim.P. 16.  These requests include Parker's request in his

motion papers for (1) written or recorded statements provided by Parker before and/or

---

[2] Defendants' pretrial motions include certain requests for dispositive relief which are addressed in a separate Report and Recommendation filed contemporaneously with this Decision and Order, specifically requests by Parker and Jackson to suppress evidence derived from electronic eavesdropping; by Parker for a *Franks* Hearing; and by Parker to suppress evidence obtained from search warrants.

[3] Defendants request permission to join any pretrial motion made by their co-Defendant. Defendants' motions are GRANTED insofar as each Defendant has standing to make such requests and the relief requested was timely sought by other Defendants who may have filed relevant motions.

after arrest; (2) records which reference oral statements made by Parker; (3) a copy of Parker's prior criminal record and/or prior similar bad acts committed by Parker which the Government intends to use at trial pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)"); (4) documents and tangible objects that are material to the defense or which will be introduced at trial; (5) examinations and tests conducted pursuant to the investigation; (6) the results of physical and/or mental examinations material to the defense or which will be used at trial; (7) a written summary of testimony the Government will introduce at trial pursuant to Federal Rules of Evidence 702, 703 or 705 ("Rule 702," "Rule 703," Rule 705"); (8) copies of all photographs and/or video recordings that pertain to this case which the Government will introduce at trial; (9) the names and identities of all expert witnesses the Government will call at trial, as well as "their qualifications, subject of testimony, and reports;" (10) notice of the Government's intent to use evidence discoverable under Rule 16, pursuant to Federal Rule of Evidence 12(b)(4)(B) ("Rule 12(b)(4)(B)").

The Government responds that it has fully complied with its obligations under Rule 16 and, acknowledging that this obligation is ongoing, represents it will continue to provide Defendants with new Rule 16 material/information as it arises.  Government Response at 37-38.  Specifically, the Government represents it will forward Defendants the identity, background, and of summaries of testimony of expert witnesses, and states a forensic chemist will be called to testify about cocaine and its characteristics, as well as a law enforcement witness to testify about the methods, language, packaging, techniques and dealings commonly used by drug distributors for distribution and possession of narcotics.  Government Response at 38.  Finally, pursuant to Rule

4

12(b)(4), the Government states it shall use all evidence in its possession which is within the scope of Rule 12(b)(4), including, but not limited to (1) evidence recovered from search and seizure of all Defendants' residences; (2) phone intercepts and their accompanying transcripts; (3) evidence recovered from Defendants during their arrests; (4) Defendants' statements; and (5) all other evidence obtained during the course of the investigation. *Id.*

At oral argument, the court directed all counsel to address any remaining issues pursuant to Rule 16 not previously resolved at a prior court proceeding, or as a result of the extensive discovery voluntarily provided by the Government.  Defendant Jackson requested the Government to supply the identity of undisclosed informants as to Jackson.  The Government replied it would supply the identity of the informants two to three weeks prior to trial.  Accordingly, Defendant's motion is DISMISSED as moot.  All other Rule 16 issues raised in Defendant Parker's motion, but not resolved by the court at oral argument, are deemed moot, and DISMISSED as such.

Based on the following, Defendants' remaining motions are GRANTED, in part**,** DENIED, in part, and DISMISSED as moot, in part.  The Government's motion for reciprocal recovery is GRANTED._____

**DISCUSSION**

**1.      Request for Bill of Particulars**

Defendants request, pursuant to Fed. R. Crim. P. 7(f) ("Rule 7(f)"), a Bill of Particulars seeking details as to their alleged violations of 21 U.S.C. §§ 841 and 846 in

connection with the Conspiracy Count and Counts 2, 3, and 6 of the Indictment. Eoannou Affirmation ¶¶ 4-5(p); Davis Affirmation ¶¶ 12-13.  Specifically, Jackson and Parker seek disclosure of all known but unnamed co-conspirators and the names of all persons involved in the conspiracy.  Eoannou Affirmation ¶ 5; Davis Affirmation ¶ 12. As to the Conspiracy Count, Defendant Jackson seeks additional particularization as to the date Jackson joined the conspiracy; the nature of the agreements Jackson had with others in furtherance of the conspiracy; whether Jackson's knowledge of the possession and distribution was actual or constructive; and the location where all acts were committed by Jackson or any co-conspirator in furtherance of the conspiracy.  Eoannou Affirmation ¶ 5.  Similarly, Defendant Parker proffers particularization requests relative to the Conspiracy Count which include identifying "unknown" persons, their function in the conspiracy and their relationship with other co-conspirators; the time and manner which Parker joined the conspiracy; Parker's alleged acts committed in furtherance of the conspiracy; how and when Parker left the conspiracy; and the quantities of cocaine allegedly involved in the conspiracy.  Davis Affirmation ¶ 12.

Defendant Jackson alone requests particularization regarding Counts 2, 3, and 6 of the Indictment.  Specifically, Jackson requests particulars as to the quantity of cocaine allegedly possessed by Jackson on December 1, 2004 (Count 2), January 14, 2005 (Count 3), and April 15, 2005 (Count 6), as well as the location where these instances occurred and whether possession on the identified dates was actual or constructive.  Eoannou Affirmation ¶ 5 (h-p).

Under Rule 7(f), a court may direct the filing of a Bill of Particulars as justice requires.  Fed.R.Civ.P. 7(f).  A defendant may seek particularization to identify with

sufficient particularity the nature of the charges against him, thereby enabling the defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy if he should be prosecuted a second time for the same offense.  *Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987); *United States v. Taylor*, 707 F.Supp. 696 (S.D.N.Y. 1989).  The decision as to whether to direct further particularization is within the discretion of the court.  *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984).

The test as to whether to order particularization is "whether the information sought is necessary, not whether it is useful."  *United States v. Matos-Peralata*, 691 F.Supp. 780, 791 (S.D.N.Y. 1988), *aff'd sub nom. United States v. Benitez*, 920 F.2d 1080 (2d Cir. 1990).  The court will not order particularization where the government has provided the information requested either "in the indictment or some acceptable alternative form."  *Bortnovsky, supra*, at 574; *United States v. Feola,* 651 F.Supp. 1068, 1133 (S.D.N.Y. 1987), (whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to unobjected requests for particulars, prior proceedings, and the indictment itself may be considered in deciding whether to order particularization)*, aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied sub nom. Marin v. United States*, 493 U.S. 834 (1989).  A Bill of Particulars should only be required "where the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *Feola*, *supra,* at 1132.  Further, "[a]cquisition of evidentiary detail is not the function of the bill of particulars."  *United States v. Torres*, 901 F.2d 205, 234 (2d Cir.) (denying request for Bill of Particulars  identifying unindicted alleged co-conspirators referred to in indictment

7

as 'known and unknown' on the basis that such information was unnecessary to advise defendants of the specific acts of which they were accused), *cert. denied sub nom. Cruz v. United States*, 498 U.S. 906 (1990) .

An indictment need not allege an overt act in furtherance of the conspiracy if the indictment alleges a conspiracy to distribute narcotics, and further alleges the time in which the conspiracy was operative and the statute that was allegedly violated.  *United States v. Hendrickson,* 26 F.3d 321, 337, n. 9 (2d Cir. 1994) (citing *United States v. Bermudez*, 526 F.2d 89, 94 (2d Cir. 1975)), *appeal after remand,* 104 F.3d 349 (2d Cir. 1996), *cert. denied sub nom. Hendrickson v. United States,* 520 U.S. 1129 (1997); *United States v. Delvecchio,* 816 F.2d 859, 864 (2d Cir. 1987); *United States v. Macklin*, 1988 WL 118471 * 1 (W.D.N.Y. 1988).  A defendant does not "need" detailed evidence about the conspiracy in order to prepare for trial.  *Feola, supra*, at 1132.  Additionally, as the government can prove the existence of a conspiracy through circumstantial evidence, a Bill of Particulars comprised of very specific details is not required for a drug trafficking conspiracy charge.   *Taylor*, *supra,* at 699.

A fair reading of the Indictment as a whole provides sufficient detail of the substance of the charges against Defendants regarding the dates and locale of the alleged conduct.  As such, the Indictment sufficiently informs Parker and Jackson of the nature of the charges against them to permit adequate trial preparation and avoidance of unfair surprise without formal particularization.

The court also finds that much of the information which Defendants seek through particularization has been made available to Defendants by the Government through extensive voluntary discovery, including copies of all applications, affidavits, and orders

8

submitted in support of the various Title III interceptions of wire and electronic communications conducted in this case, copies of all the tapes of all the conversations recorded pursuant to the interceptions, copies of the "line sheets," or logs regarding these wire interceptions, copies of all search warrants, as well as the applications and affidavits submitted to obtain the warrants, and various investigative reports from the DEA and FBI.  Government's Response at 5.  Where information sought by a defendant has been provided in some acceptable alternative form, such as pretrial proceedings, no Bill of Particulars is required.  *Bortnovsky*, *supra*, at 547.

To order particularization as Defendants request would compel the Government to reveal its evidence or theory of prosecution beyond any arguable justification given the relatively uncomplicated nature of the charged offenses, and extensive voluntary discovery and other proceedings in this case. Therefore, Defendants' motions for particularization are DENIED.

**2.     Request for Exculpatory and *Jencks* Act Materials**

Defendants seek disclosure of all *Brady* and *Giglio* materials, as well as statements and reports of potential Government witnesses at trial pursuant to 18 U.S.C. § 3500 ("*Jencks* Act materials").  Eoannou Affirmation ¶¶ 6-15 (*Giglio* request), 16-20 (*Jencks* Act request); Davis Affirmation ¶¶ 18-21 (*Brady* request).  The Government has recognized its ongoing duty to provide any exculpatory or mitigating evidence in its possession to Defendants, including any information that would impeach a Government witness.  Government Response at 10-11.  Specifically, the Government agrees to provide the following impeachment material

9

> promises of leniency or immunity agreements with government
> witnesses, plea and/or non-prosecution agreements and letters or
> memorandum of understanding regarding such, criminal arrest
> records of all prosecution witnesses, immoral, vicious or criminal
> acts committed by the witnesses, prior inconsistent statements, any
> payments to witnesses or family members thereof, and all other
> promises or considerations given by government personnel to
> government witnesses or family members thereof, in accordance
> with the schedule set by the District Court prior to trial and no later
> than when the government produces and delivers the *Jencks* Act
> material in this case.

Government's Response at 13.

*Brady v. Maryland,* 373 U.S. 83 (1963), requires the prosecution provide the

defense with any evidence favorable to the accused where the evidence is material to

guilt or punishment.  The Government denies possession of any exculpatory material

which qualifies under *Brady* at this time, however, it acknowledges its continuing duty to

produce such material.  Government Response at 39.  The defense is also entitled to

pertinent evidence regarding a material witness's credibility or reliability, including

evidence of any agreement or promises of leniency between the government and a

government witness.  *Giglio v. United States*, 405 U.S. 150, 154 (1972).  Failure of the

government to reveal evidence of an understanding in return for testimony may violate

due process.  *United States v. Pfingst*, 477 F.2d 177, 191 (2d Cir.), *cert. denied,* 412

U.S. 941 (1973); *United States v. Feola*, 651 F.Supp. at 1135.

There is, however, "no absolute right to pretrial discovery of *Brady* material."

*United States v. Ullah*, 2005 WL 629487, * 9 (W.D.N.Y. 2005); *Weatherford v. Bursey*,

429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a

criminal case, and Brady did not create one"); *United States v. Gil,* 297 F.3d 93, 105 (2d

Cir. 2002) (quoting *United States v. Coppa,* 267 F.3d 132, 144 (2d Cir. 2001) (a

prosecutor must disclose *Brady* material "in time for its effective use" at trial)); *Leka v.

Portuondo,* 257 F.3d 89, 100 (2d Cir. 2001) ("disclosure [of *Brady* material] prior to trial

is not mandated") (bracketed material added).  Although *Brady* does not authorize a

general right of pretrial discovery and primarily seeks to avoid unfair trials resulting from

suppression of exculpatory material, courts have nonetheless ordered pretrial disclosure

of *Brady* material.  *United States v. Taylor*, 707 F.Supp. 696, 703  (S.D.N.Y. 1989)

(disclosure of *Brady* materials one week prior to trial, except that impeachment

materials pertaining to government witnesses should be disclosed the day before that

witness will take the stand); *Feola, supra,* at 1136 (disclosure thirty days prior to trial).

Based on the Government's representation that it will voluntarily disclose all

*Brady* impeachment materials in accordance with the schedule set by the District Court

prior to trial and no later than any production of material pursuant to the *Jencks Act***,** as

well as the acknowledgment of its continuing duty to provide exculpatory material to

Defendants under *Giglio*, the court finds that any *Brady* and *Giglio* material, including

any impeachment material, should be turned over to the defense **no later than two

weeks prior to the commencement of trial or such other date as the District Judge

may direct.**

Defendant Jackson has also requested the disclosure of *Jencks Act* material,

pursuant to 18 U.S.C. § 3500.  The court, however, has no authority to require pretrial

disclosure of *Jencks Act* material.  *United States v. Ullah,* 2005 WL 629487, * 7

(W.D.N.Y. 2005) (citing *United States v. Scotti*, 47 F.3d 1237, 1249-50 (2d Cir. 1995)

(denying pretrial production of *Jencks Act* material and citing *United States v.*
*Sebastian*, 497 F.2d 1267, 1269-70 (2d Cir. 1974) (holding the court cannot compel
pretrial production of *Jencks Act* material)).   Based on the Government's representation
that it will disclose *Jencks* Act material at least two weeks prior to trial or in accordance
with the pretrial order of the District Judge concerning the pretrial disclosure of witness
statements pursuant to 18 U.S.C. § 3500, Defendant's motion for an order directing
such disclosure is DENIED.


3.     **Identity of Informants**

Defendants have requested the Government provide the names of the informants
or cooperating sources who provided information to investigators in this case
concerning the pending charges.  Eoannou Affirmation ¶¶ 21-22; Davis Affirmation ¶¶
14-17.  Specifically, Defendants assert disclosure is required to provide Defendants an
opportunity to prepare an adequate defense.  Eoannou Affirmation ¶ 22; Davis
Affirmation ¶ 17.  The Government opposes such disclosure, arguing that, through
extensive voluntary discovery including various Title III applications in this case,
Defendants are in possession of the particular information provided by informants to the
Government.  Government Response at 14.  However, the Government does not state
that the confidential informants will not testify for the Government at trial.

Substantial policy considerations override the need for full disclosure of
informants' identities.  *Roviaro v. United States*, 353 U.S. 53, 61 (1957) (holding that
informer's privilege must yield to disclosure at trial if necessary to a "fair determination").

Disclosure of the identity of confidential informants may be withheld to protect the anonymity of informants and to secure the informants' continued cooperation in furnishing information regarding violations of law.   *Roviaro,* 153 U.S. at 59; *United States v. Fields*, 113 F.3d 313, 324 (2d Cir.), *cert. denied sub nom. Fields v. United States*, 522 U.S. 976 (1997).  It is equally permissible to withhold information from which such identity may be inferred and thus revealed.  *See Roviaro, supra*, at 60.  It is well settled that "an informant's identity need not be disclosed unless 'essential to the defense.'" *United States v. Morales*, 280 F.Supp.2d 262, 271 (S.D.N.Y. 2003) (quoting *United States v. Russotti*, 746 F.2d 945, 949 (1984).

In determining whether disclosure is essential, courts are required to balance the public's interest in obtaining information to assist law enforcement against the defendant's right to prepare a defense.  *Roviaro, supra*, at 62; *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003), *cert. denied sub nom. Mazyck v. United States,* 540 U.S. 1157 (2004).  A confidential informant's identity or the contents of an informant's communication must therefore be disclosed if such information is "relevant or helpful" to an accused's defense at trial, particularly in relation to a potential entrapment defense or a defendant's knowledge of the character of the contraband.  *Roviaro, supra*, at 60-61, 64; *DiBlasio v. Keane*, 932 F.2d 1038, 1042 (2d Cir. 1991); *see also United States v. Jackson*, *supra*, at 69-70 (approving informant identity disclosure to facilitate entrapment defense to drug sale charge).  Defendants bear the burden of establishing the need for such disclosure and such need will be found only upon demonstrating that the absence of such disclosure will deprive the defendant of a fair trial.  *Fields, supra,* at 324; *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983).

13

In the instant case, Defendants' generalized assertion that disclosure is necessary for Defendants to adequately prepare a defense is insufficient to demonstrate the need for the requested disclosure. *United States v. Flaherty*, 295 F.2d 182, 202 (2d Cir. 2002) (possible benefit of disclosure to defense must be non-speculative). Moreover, Defendants do not demonstrate how any informant's identity is material to their defense at trial, and have therefore failed to meet their burden under *Roviaro* on this ground for disclosure. Accordingly, Defendants' motions for disclosure of the identity of confidential informants are DENIED.

**4.     Pretrial Audibility Hearing**

Defendants Jackson and Parker request an audibility hearing as to the tape recordings the Government seeks to introduce at trial. Eoannou Affirmation ¶¶ 29-31; Davis Affirmation ¶ 32. The Government consents to a hearing to determine the tapes' audibility "to the extent that the parties cannot reach an agreement as to the tape's contents." Government Response at 20. At oral argument held March 16, 2006, the Government represented the tapes would be transferred to CDs to enhance their audibility within approximately two weeks. As such, at oral argument, the court DISMISSED Defendants' request for an audibility hearing without prejudice to renewal if, upon further review of the tapes once transferred to CDs, Defendants could specifically articulate which tapes, or portions thereof, are allegedly inaudible. At that time, the court stated Defendants may file a further motion requesting an audibility determination as to portions of the tapes that they assert, with particularity, to be inaudible. If such motion is made immediately subsequent to the filing of this Decision

and Order, the court instructed Defendants to make their motion to the District Judge for

further proceedings as the District Judge may determine.  As Defendants have not

renewed their motions challenging the tapes' audibility subsequent to the transfer to

CDs, the court deems Defendants' motions DISMISSED without prejudice to renewal

before the District Judge.


5.      **Evidence Admissible Under Federal Rules of Evidence 404(b), 608 & 609**

Defendant Parker requests pre-trial disclosure and a pre-trial hearing pursuant to

Federal Rules of Evidence 404(b) ("Rule 404(b)), 608 ("Rule 608") and 609 ("Rule 609")

to determine the admissibility of such evidence.  Davis Affirmation ¶¶ 22-28.  Parker

also argues that due process requires the requested impeachment material be provided

to him "to aid [Parker] in deciding whether to proceed to trial or accept the government's

plea offer," citing *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998), as authority for

this contention.

In *Avellino*, the court stated

> In the context of an attack on the validity of a plea, evidence is
> considered material where "there is a reasonable probability that
> but for the failure to produce such information the defendant would
> have insisted on going to trial."  Assessment of that question
> involves an objective inquiry that asks not what a particular
> defendant would do but rather what is "the likely persuasiveness of
> the withheld information."

*United States v. Avellino*, 136 F.3d 249, 256 (2d Cir. 1998) (internal citations omitted).

Here, Parker does not identify any particular form of impeachment material nor

does he assert a specific reason why providing such information would assist him in

accepting a plea offer.  Further, given the nature of the instant charges and plethora of evidence against Parker based on wiretaps, controlled buys, and surveillance, the court finds such impeachment evidence, although "possibly useful to the defense," is not likely to be the sole piece of evidence upon which the jury shall decide whether to convict him.  *Avellino, supra,* at 256 ("In general, evidence whose function is impeachment may be considered material where the witness in question supplied the only evidence linking the defendant to the crime").  *See also Giglio,* 405 U.S. at 154. More particularly, absent any showing by Parker that the requested information, if provided, would in fact cause him to accept a plea offer, there is no showing the information is material, and thus the failure to provide such information does not constitute a violation of due process.  *Avellino, supra,* at 256-59.  The court also observes that, unlike the credibility information at issue in *Avellino,* any Rule 404(b) or Rule 609 information adverse to Parker is undoubtedly well known or available to him, and not within the sole control of the Government as was the case in *Avellino*.  As Parker has not demonstrated that disclosure of Rule 609 evidence would result in him taking a plea offer, that the purported evidence is solely available to the Government, or that such evidence is the only evidence linking Parker to the crime, the court finds Parker's reliance on *Avellino* to be misplaced.

The Government responds it has no information relating to Rule 608, and is attempting to obtain evidence material to Rule 404(b).  Government Response at 39-40. The Government has represented that it intends to offer Rule 404(b) material at trial as proof of Defendants' motives, opportunities, intentions, preparations, plans, knowledge, identity or absence of mistake or accident at trial.  *Id.* at 39  Further, the Government

16

states it will provide Rule 404(b) information to Defendants in accordance with the District Court's scheduling order, and it will use Rule 609 material in its possession to "impeach the defendants with their criminal histories, and any probation or parole history, should they elect to testify at trial."  Government Response at 40.  Should additional Rule 609 material become known to the Government, the Government represents it will "promptly" notify Defendants.  *Id.*

Rule 404(b) prohibits the admission of evidence of defendant's other crimes or wrongs as proof of defendant's character, however, such evidence may be admitted for another purpose, such as to show motive or opportunity.  Fed.R.Evi. 404(b).  Because the Government represents that it will notify Defendants of its intention to introduce Rule 404(b) evidence at trial, in accordance with the scheduling order set by the District Judge, and that it will only use Rule 609 evidence to impeach Defendants if they testify, determination of the admissibility of such prior wrongs or convictions under Rule 404(b) and Rule 609 is premature and, according to Fed.R.Evid. 403 and Rule 609 (a)(1), should be determined by the trial judge.  As such, Parker's motion for a pretrial hearing pursuant to Rules 404(b) and 609 is DISMISSED without prejudice to renewal before the District Judge.

**6.**     **Request for Reciprocal Discovery**

The Government moves for reciprocal discovery pursuant to Fed.R.Crim.P. 16(b).   Defendants have not opposed this request.  Accordingly, the motion is GRANTED.  Accordingly, Defendants shall provide such discovery, if any, **not later**

**than 30 days prior to trial or such other date as the District Judge may direct.**

7.    **Severance**

Defendant Jackson moves to sever his case from Defendant Parker's, alleging that evidence against Parker may prejudice Jackson, that Parker may proffer theories which conflict with Jackson's, that statements the Government will use against Parker may prejudice Jackson.  Eoannou Affirmation ¶¶ 23-27.  Jackson also contends it may be necessary to conduct an *in camera* examination, pursuant to Fed.R.Crim.P. 14(b) ("Rule 14(b)"), of Defendants' statements which the Government shall use at trial to determine whether such statements are similarly prejudicial.  *Id.* ¶ 28.  The Government responds that Jackson's request is based on speculation of prejudicial effect that does not warrant a severance.

According to Fed.R.Crim.P. 14(b),

> If a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment . . . or by such joinder for trial together, the Court may order . . . separate trials of counts, grant a severance of defendants or require whatever other relief justice requires.

Fed.R.Crim.P. 14(b).

A court considering a motion for severance under Rule 14 should make a two-step inquiry, *i.e.,* "whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir.), *aff'd,* 894 F.2d 501 (2d Cir. 1990).  If the joinder was proper, the court shall then decide whether the joinder was prejudicial to the defendant pursuant to

Fed.R.Crim.P. 14.  *Ruiz, supra*, at 505.  The decision whether to grant severance is "committed to the sound discretion of the trial judge." *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), *cert. denied,* 493 U.S. 1081 (1990).  "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (narcotics conspiracy case).  Joinder of counts in an indictment is proper, pursuant to Fed.R.Crim.P. 8(a) ("Rule 8(a)"), where two or more persons' criminal acts are "'unified by some substantial identity of facts or participants' or 'arise out of a common plan or scheme'" as in a conspiracy case.  *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir. 1989).

Here, the Conspiracy Count is plainly connected in place and time to the counts charging Defendants Parker and Jackson with possession with intent to distribute and distribute cocaine in violation of 21 U.S.C. § 841 ("§ 841"), thereby demonstrating the requisite identity of facts and participants.  See Indictment Counts 2-7.  As such, the requirement for joinder of counts under Rule 8(a) permitting joinder of counts that "are of the same or similar character, or are based on the same act or transaction or are connected with or constitute parts of the same scheme or plan" is satisfied.

Also, a plain reading of the Indictment demonstrates the violations occurred during the period the charged conspiracy against Parker and Jackson were operative ("[b]etween in or about December 2004 and in or about July 2005").  Indictment Counts 1-7.  Because the individual § 841 counts are alleged to have occurred within the period of the Conspiracy Count, they are also factually "connected . . . with the same scheme or plan."  Fed.R.Crim.P.  8(a).  As such, these counts are properly joined in the Indictment as authorized by Rule 8(a).  Accordingly, all counts as to Defendants Parker

and Jackson were properly joined in the Indictment in compliance with Rule 8(a).

Nevertheless, a court is authorized to sever counts or defendants, pursuant to Rule 14(a), "[i]f it appears that a defendant . . . is prejudiced by a joinder," despite an indictment's facial compliance with Fed.R.Crim.P. 8(a). *United States v. Feyrer,* 333 F.3d 110, 114 (2d Cir. 2003); *United States v. Nguyen*, 793 F.Supp. 497, 503 (D.N.J. 1992). However, a defendant has a "heavy burden" to show facts demonstrating that the defendant would be so prejudiced by a joint trial, that the joint trial would, in effect, deny him or her a fair trial. *United States v. Piervinanzi*, 1990 WL 139021, * 2 (S.D.N.Y. 1990). Specifically, a defendant requesting severance under Rule 14(a) must show substantial prejudice resulting from joinder, not just that the defendant would have a better chance for acquittal at a separate trial. *See United States v. Torres*, 901 F.2d 205, 230 (2d Cir.), *cert. denied,* 498 U.S. 906 (1990); *United States v. Villegas*, 899 F.2d 1324, 1347 (2d Cir.), *cert. denied,* 498 U.S. 991 (1990). Here, Jackson has not met his burden by proffering facts which demonstrate Jackson will be substantially prejudiced at a joint trial with Parker. Further, "the mere fact that codefendants seek to place blame on each other [in a drug prosecution] is not the sort of antagonism that requires a severance." *Villegas, supra,* at 1346.

> When the challenge to the denial of severance is premised on a claim that two defenses were antagonistic, a defendant satisfies his burden of showing substantial prejudice only if it can be said that "'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant.'"

*Id.* at 1346 (internal citation omitted).

Jackson does not allege that the jury must disbelieve Parker's testimony to believe

Jackson even assuming Parker were to testify, the likelihood of which is unknown at this time, nor does either Defendant represent he intends to testify.  As such, Jackson's motion for severance is unwarranted on this ground.

Further, the Second Circuit has stated that "proof that a co-defendant would waive his Fifth Amendment privilege and testify at a severed trial" is a factor to consider in determining whether to grant defendant's motion for severance on the ground that a co-defendant would offer "exculpatory testimony at a separate trial."  *United States v. Cardascia,* 951 F.2d 474, 485 (2d Cir. 1991).  However, as neither Defendant alleges that a joint trial will prevent the other from providing favorable testimony or that such co-Defendant will waive his Fifth Amendment privilege and provide testimony at a separate trial in order to exculpate the severed defendant on the charges against him, Jackson's motion for severance is without merit.  *Cardascia, supra.*

Based on the foregoing, Jackson's motion for severance is DENIED.


**CONCLUSION**

Defendants' motions are DENIED in part, GRANTED in part, and DISMISSED as moot, or premature, in part.  The Government's motion for reciprocal discovery is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        May 17, 2006
              Buffalo, New York